**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| **LORENA CORDOVA DE ORNELAS,** § <br> Plaintiff, § <br> § <br> v. § <br> § <br> **ANDREW SAUL, COMMISSIONER OF** § <br> **SOCIAL SECURITY OFFICE,** § <br> Defendant. § | No. EP-20-CV-00099-ATB |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff Lorena Cordova de Ornelas ("Ornelas")[1] appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Court orders that the Commissioner's decision be **AFFIRMED**.

## I.     PROCEDURAL HISTORY

On September 15, 2017,[2] Ornelas filed an application for SSI, alleging a disability onset date of August 1, 2015. (R. 16). Ornelas's application was denied initially on January 5, 2018, and upon reconsideration on June 7, 2018. (R. 16). An Administrative Law Judge ("ALJ") held

---

[1] At the hearing, the ALJ referred to Plaintiff as "Ms. Cordova" upon direction of Plaintiff's counsel. (R. 45). However, Plaintiff's counsel refers to Ms. Cordova de Ornelas as "ORNELAS" in the Brief. (ECF No. 19, p. 1). Thus, this Court respectfully will refer to Ms. Cordova de Ornelas as "Ornelas."
[2] In her Brief, Ornelas states that she filed the application on September 18, 2018; however, Ornelas's citation to the record indicates a filing date of September 15, 2017. (ECF No. 19, p. 1) (citing (R. 16)).

a hearing on March 16, 2019. (R. 33-57). At the hearing, the ALJ granted Ornelas's motion to amend her onset date from August 1, 2015, to September 15, 2017. (R. 16, 36). The ALJ issued a decision ("Decision") on May 31, 2019, finding that Ornelas was not disabled. (R. 27). On February 27, 2020, the Appeals Council denied Ornelas's request for review of the ALJ's Decision. (R. 1-4).

## II. ISSUE

Ornelas presents the following issues for review:

1. Whether the ALJ "disregarded the objective medical evidence of chronic pain syndrome" in his residual functional capacity ("RFC") determination (ECF No. 19, p. 2); and

2. Whether the ALJ erred in the Step 5 analysis "by making a vague and conclusory job determination." (*Id.* at p. 4).

## III. DISCUSSION

### a. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's Decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272 (citation and internal quotes omitted). The Commissioner's findings will be upheld if supported by

substantial evidence. *Id.* A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (citation and internal quotes omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's Decision. *Masterson*, 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (citation and internal quotes omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

  **b.**  **Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520(a)(4). Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical Vocational Guidelines of the regulations, by vocational expert ("VE") testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut the finding

that there are jobs that exist in significant numbers that the claimant could perform. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

In the present case, the ALJ found that Ornelas "ha[d] not engaged in substantial gainful activity since September 15, 2017, the (amended) alleged onset date." (R. 18). At step two, the ALJ found that Ornelas "has the following severe impairments: cervical degenerative disc disease, (left) kidney cancer, and obesity." (R. 18). Further, the ALJ found that "[t]he medical evidence establishes that the above impairments cause significant limitation in the claimant's ability to perform basic work activities . . . ." (R. 18). At step three, the ALJ found that Ornelas did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19).

Before proceeding to step four, the ALJ found that Ornelas "ha[d] the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b)." (R. 20). At step four, the ALJ determined that Ornelas could not perform any past relevant work. (R. 25). Subsequently, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 26). Accordingly, the ALJ found that Ornelas was not disabled within the meaning of the Social Security Act from September 15, 2017, through the Decision date. (R. 26).

  **c.**  **Analysis**

  ***1.***  ***The ALJ Properly Considered Ornelas's Chronic Pain Syndrome When Formulating the RFC***

Ornelas argues that the ALJ's RFC determination is not supported by substantial evidence "because the ALJ disregarded the objective medical evidence of chronic pain syndrome," and that "[t]he objective medical evidence establishes that Ornelas is fully disabled and cannot engage in full-time light work due to chronic pain syndrome from cervical herniation at the C6-C7,

spondylosis at C4-C7 with disc bulging and endplate degeneration." (ECF No. 19, p. 2) (citing (R. 38)). To support this contention, Ornelas relies upon her own testimony that "she had difficulty walking and climbing stairs consistent with Dr. Misenhimer's opinion and that her pain medication caused sleepiness." (*Id.*) (citing (R. 43-44)). Further, Ornelas cites to medical records dated 2017 from Dr. Gregory Misenhimer and records from visits in 2017 and 2018 to the El Paso Pain Center to support her testimony of chronic pain. (*Id.* at p. 2-4).

In Response, the Commissioner argues that, although the ALJ acknowledged in his RFC formulation that the medical records included a diagnosis of chronic pain syndrome, Ornelas "fail[ed] to show, by 'objective medical evidence' or by her own subjective complaints, that she was more limited than the ALJ determined." (ECF No. 21, p. 5).

A claimant's RFC is "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. § 416.945(a)(1). The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the relevant medical and other evidence and determine the claimant's abilities despite his or her physical and mental limitations. *See* 20 C.F.R. 416.945(a)(3). The ALJ must consider the limiting effects of an individual's impairments, even those that are not severe, and any related symptoms. *See* 20 C.F.R. § 416.945(e). The relative weight to be given to the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (per curiam). "[T]he ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record." *Bessey v. Berryhill*, 1:18-CV-000078-AWA, 2019 WL 1431599, at *4 (W.D. Tex. Mar. 29, 2019); *see Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

"To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain." *Ripley*, 67 F.3d at 556; *see*

*also* 20 C.F.R. § 404.1529(b). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ examines all the available evidence. *See* 20 C.F.R. § 404.1529(c)(1). The ALJ must consider whether a claimant's statements about the intensity, persistence, and limiting effects of their symptoms are consistent with the objective medical evidence. *See* 20 C.F.R. §§ 404.1529(a), (c)(4). Further, it is the province of the ALJ to weigh competing medical opinions. *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) ("[T]he determination of residual functional capacity is the sole responsibility of the ALJ."). "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson*, 309 F.3d at 272 (citation and internal quotes omitted).

Here, the ALJ recognized in his decision that Ornelas "has medically determinable impairments that could reasonably be expected to produce symptoms," but found that "[Ornelas's] testimony and statements regarding the duration, frequency, intensity, and other information regarding those symptoms are not consistent with the objective evidence of record." (R. 21).

> **A.** *The ALJ was within his Discretion Not to Address Dr. Misenhimer's Reasonable Accommodation Verification/Certification*

In support of her testimony of debilitating pain, Ornelas first highlights Dr. Misenhimer's Reasonable Accommodation Verification/Certification ("Accommodation Certification") prepared on June 14, 2017, for the Housing Authority of the City of El Paso. (ECF No. 19, p. 3) (citing (R. 213-14)). The Accommodation Certification reflects Dr. Misenhimer's opinion that Ornelas has a physical disability or impairment expected to last 24 months. (R. 213). Dr. Misenhimer opines that "Ms. Ornelas needs a one level apartment so she will not have to navigate stairs after surgery secondary to decreased range of motion in the cervical spine." (R. 214); *see also* (R. 215) (a letter from Dr. Misenhimer requesting that Ornelas "be provided with an apartment on the first level" because Ornelas was "being prepared for Anterior Posterior Cervical Fusion in

the near future" and it was in her "best interest and safety to be moved to the first level"). Further, Dr. Misenhimer outlines "[c]aring for self," "[w]alking," "[e]ntering/existing the unit," and "[b]athing" as the "major life activities that will be assisted" by the accommodations requested. (R. 214).

The Court finds that Dr. Misenhimer's opinion regarding Ornelas's accommodations appears to relate only to a temporary accommodation after Ornelas's surgery. As the Commissioner indicated in his Brief, the record here fails to show that Ornelas ever underwent a cervical fusion procedure. *See* (ECF. No. 21, p. 5 n.3); *see also* (R. 582) (March 18, 2018, El Paso Pain Center visit where Ornelas denied a recent surgery); (R. 587) (February 12, 2018, same); (R. 591) (December 14, 2017, same); (R. 596) (November 9, 2017, same). Therefore, the Court finds that the ALJ did not err in not considering Dr. Misenhimer's opinion of accommodations which were contingent upon a surgery that never occurred.

### B.     *The ALJ Properly Weighed the El Paso Pain Center Appointment Records*

Ornelas also highlights evidence in the record that she "was seen at the El Paso Pain Center for neck and back pain and difficulty walking." (ECF No. 19, p. 3) (citing (R. 582-83) (March 18, 2018, visit reporting neck and back pain and difficulty walking); (R. 587-88) (February 12, 2018, same); (R. 591-92) (December 14, 2017, same); (R. 596-97) (November 9, 2017, same)). However, the record also shows that Ornelas frequently showed good motor strength. *See* (R. 323) (February 15, 2018, appointment with Dr. Landeros reporting "motor strength normal"); (R. 286) (March 30, 2017, visit with Dr. Misenhimer and Dr. Westbrook reporting negative finding for "[d]ifficulty walking, dizziness and headache"); (R. 303) (December 27, 2017, appointment with Dr. Hunko reporting "[a]ble to sit and move about the exam room and office without any difficulty and without the use of assistive devices . . . [and ability] to walk on toes and heels").

Moreover, an ALJ may discount a claimant's testimony when the evidence reflects that pain can be remedied or controlled by medication or therapy. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). Here, Dr. Gabriela Hunko found "no evidence of pain" during a December 27, 2017, consultation appointment. (R. 303). At a March 12, 2018, appointment with Dr. McAnulty, Ornelas herself reported that she felt her symptoms were "well controlled on her medications." (R. 329). Finally, Ornelas reported a pain level of "0" on a scale of 0-10 during multiple examinations. *See* (R. 579) (February 15, 2019 examination); (R. 556) (November 29, 2018 examination); (R. 463) (November 12, 2018 examination); (R. 468) (July 24, 2018 examination); (R. 471) (July 16, 2018 examination); (R. 475) (February 28, 2018 examination); (R. 478) (February 14, 2018 examination). Accordingly, the ALJ found that "[Ornelas's] allegations regarding the severity of her limitations are not corroborated or substantiated by the medical evidence and are inconsistent with the record as a whole . . . [and found] that the evidence of record establishes that [Ornelas] is capable of performing work-related activities such as walking, standing, sitting, lifting and carrying . . . ." (R. 24-25); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) ("Pain constitutes a disabling condition when it is constant, unremitting, and wholly unresponsive to treatment.") (internal citation omitted); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) ("[N]ot all pain is disabling; moreover, subjective evidence need not be credited over conflicting medical evidence.").

Further, Ornelas highlights the relevant El Paso Pain Center records that indicate assessments of chronic pain syndrome, radiculopathy, and myalgia. (ECF No. 19, p. 3); *see* (R. 584). However, a diagnosis of chronic pain syndrome, standing alone, does not establish the

presence of any work-related limitations. *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (despite chronic pain syndrome and degenerative disc disease, the ALJ properly determined that the claimant could engage in light work activity); *see also Dise v. Colvin*, 630 F. App'x 322, 326 (5th Cir. 2015) ("The ALJ [is] only required at step four to determine the effects that impairments have on a claimant's ability to work. . . . [A] diagnosis is not, itself, a functional limitation"); *Hames v. Heckler*, 707 F. 2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se."). Instead, the ALJ must consider the limiting *effects* of Ornelas's chronic pain syndrome, and any related *symptoms*. *See* 20 C.F.R. §§ 416.929, 416.945.

In addition to medical evidence discussed above, the ALJ considered Ornelas's work history prior to the alleged disability and found it "not entirely consistent with [Ornelas's] allegation of disabling symptoms." (R. 21). The ALJ noted that "the evidence of record suggests that [Ornelas] worked relatively little during the several-year period prior to [August 1, 2015]." (*Id.*) (citing (R. 186)). Accordingly, the Court finds that it was proper for the ALJ to conclude that Ornelas's work history prior to the alleged disability "tends to raise the question whether her unemployment has been more a choice of lifestyle rather than the result of functional restriction." (R. 21); *see Menchaca v. Colvin*, No. EP-15-CV-0249-FM, 2016 WL 7131571, at *4 (W.D. Tex. Dec. 6, 2016) (finding that the ALJ's credibility evaluation to be supported by substantial evidence where the ALJ considered that "[the claimant's] work history was sporadic and he stopped working to care for his mother and brother, suggesting that his unemployment was not entirely due to his alleged impairments").

Moreover, the ALJ "also note[d Ornelas's] history of work activity during the period for which she alleges disability . . . [specifically] that she was currently working four hours per day (from six p.m. to ten p.m.) and four days per week as a cashier in a casino, a job at which she had

9

begun working in July 2018 and at which she earned $7.25 per hour." (R. 22); *see* (R. 48-49). Since Ornelas stated that the performance of that work required her to sit and stand (R. 51), the ALJ found that "taken together, the daily duration of her work schedules, the number of hours per week that she performed his [sic] work, the reasonably demanding nature of the work that she performed, and the periods of time that she performed that work strongly suggest the claimant's ability to sustain work at a substantially gainful level, should she choose to do so." (R. 22). Accordingly, the Court finds that it was proper for the ALJ to consider Ornelas's work at the casino during the disability period and conclude Ornelas could continue to perform similar tasks in the future. *See Murray v. Astrue*, 419 F. App'x 539, 541 (5th Cir. 2011) (evidence of work during a period in which a claimant alleges disability is relevant in assessing the reliability of the claimant's subjective complaints); *Vaughan v. Shalala*, 58 F. 3d 129, 131 (5th Cir. 1995) (per curiam).

### C. *The ALJ Properly Considered the Medical Opinions*

Ornelas argues that the Fifth Circuit in *Frank v. Barnhart*, 326 F. 3d 618, 622 (5th Cir. 2003) warns against the ALJ "playing doctor" and making his or her own independent medical assessments. *See* (ECF No. 19, p. 6). Furthermore, Ornelas cites to *Newton*, in which the Fifth Circuit found that the ALJ "improperly" rejected the treating physician's medical opinions "without contradictory evidence from physicians who had examined or treated [the claimant] and without requesting additional information from the treating physician." *Newton v. Apfel*, 209 F. 3d 448, 460 (5th Cir. 2000). However, as analyzed above, the ALJ found Ornelas's "allegations regarding the severity of her limitations [were] not corroborated or substantiated by the medical evidence and [were] inconsistent with the record as a whole." (R. 24); *see Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (the ALJ properly resolves conflicts in the evidence). Accordingly,

the Court finds that the ALJ did not "play doctor," but instead relied upon medical findings contrary to Ornelas's alleged limitations.

Further, Ornelas appears to be arguing that the treating physician's opinion should be given controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) (For claims filed before March 27, 2017, "[i]f [the ALJ] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported . . . and is not inconsistent with the other substantial evidence . . . , [the ALJ] will give it controlling weight."). However, based on the change for claims filed after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see* (R. 16) (Ornelas filed her claim on September 15, 2017).

Finally, Ornelas argues that the ALJ did not "articulate how they consider[ed] medical opinions from all medical sources, regardless of [acceptable medical source] status" when the ALJ "disregarded" the diagnosis of chronic pain syndrome.   (ECF No. 19, p. 4, 6) (alterations in original).  On the contrary, the ALJ stated, in relevant part:

> I have also considered the [medical] opinion evidence in accordance with the requirements of SSR 17-2p.  As for medical opinion(s) and prior administrative medical finding(s), I have not deferred or give [sic] any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources.  In accordance with 20 CFR 404.1520b(c) and 416.920b(c), I have not addressed evidence that is inherently neither valuable nor persuasive.

(R. 25).  Further, on the same page in the record to which Ornelas cites for the diagnosis of chronic pain syndrome, the ALJ, in his Decision, noted the record showed, in relevant part:

> Examination showed [Ornelas] . . . to have normal range of motion and no paraspinal tenderness.  She had intact cranial nerves, normal sensation, and "5/5" motor strength throughout, with no thenar wasting or muscle atrophy.  She had no

> identified coordination problems and demonstrated normal gait and stability and the ability to perform heel walking and toe walking.

(R. 24) (citing (R. 584)).

### D.     Conclusion

In sum, substantial evidence supports the ALJ's decision that Ornelas's pain is not disabling, and Ornelas has not shown that her pain requires restrictions greater than those reflected in the ALJ's RFC findings.  *See* (R. 24).  Accordingly, the Court finds that the ALJ properly considered and weighed the evidence of Ornelas's chronic pain and pain syndrome when formulating the RFC.

### 2.     *The ALJ Properly Relied on the Medical-Vocational Guidelines to Satisfy the Commissioner's Step 5 Burden to Show that Jobs Existed in Significant Numbers in the National Economy that Ornelas Could Perform*

Ornelas argues that "[t]he ALJ erred in the Step 5 [a]nalysis by making a vague and conclusory job determination."  (ECF No. 19, p. 4).  In Response, the Commissioner argues that "[Ornelas's] argument fails because, under the circumstances of this case, the ALJ was not required to identify specific occupations [Ornelas] could perform."  (ECF No. 21, p. 8).

After the ALJ found that Ornelas was "unable to perform any past relevant work" (R. 25), the Social Security Administration ("SSA") regulations require the ALJ to determine whether Ornelas could perform any other work available in the national economy. 20 C.F.R. § 404.1520(f). "In making this determination, an ALJ has to consider the claimant's age, education, and work experience, as well as [her] residual functional capacity."  *Fraga v. Bowen*, 810 F. 2d 1296, 1304 (5th Cir. 1987) (citing 20 C.F.R. § 404.1561).  Further, "[w]hen the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations . . . , and the claimant suffers only from exertional impairments or [her] non-exertional impairments do not significantly

12

affect [her] residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform." *Id.*

Here, the ALJ found "[b]ased on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.10." (R. 26). Medical-Vocational Rule 202.10 directs a decision of "[n]ot disabled" where: (1) the claimant is of an age that is "[c]losely approaching advanced age;" (2) the claimant has an education level of "[l]imited or less—at least literate and able to communicate in English;" (3) the claimant has a previous work experience of "[u]nskilled or none;" and (4) the RFC consists of a maximum sustained work capability that is limited to light work as a result of severe medically determinable impairments. 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.10.

Here, the ALJ properly found all four prerequisites of Medical-Vocational Rule 202.10 were satisfied. First, the ALJ considered Ornelas's age by making the finding that Ornelas "was 50 years old, which is defined as an individual approaching advanced age on the date the application was filed." (R. 25) (citing C.F.R. 416.963 (defining "[p]erson closely approaching advanced age" as age 50-54)). Further, the ALJ determined Ornelas had "limited education" and "basic English fluency for speaking, reading, and writing." (R. 26). Regarding Ornelas's work experience, the ALJ found that "[t]ransferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferable job skills." (R. 26).

Finally, the ALJ found that Ornelas was capable of a full range of light work. (R. 20). "To determine the physical exertion requirements of work in the national economy, [the Social Security Administration] classif[ies] jobs as sedentary, light, medium, heavy and very heavy." 20 C.F.R. §

13

404.1567. These definitions describe the requirements for a *full range* of work at a particular exertional level. *Malley v. Astrue*, CA No. 11-614, 2012 WL 520168, at *6 (E.D. La. Jan. 30, 2012); *see generally*, SSR 83-10, 1983 WL 31251, at *3.

Ornelas argues that the ALJ erred by finding that Ornelas "has the RFC to perform the full range of light work *without specifically listing what the light work was comprised of*." (ECF No. 19, p. 4) (emphasis added). However, the ALJ is not required to identify specific capabilities when the claimant is capable of a full range of light work and not of advanced age. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.00(b). Instead, the SSA regulations define light work, in relevant part:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). In order to perform the full range of light work, an individual "must have the ability to do substantially all of [the] activities [required]." 20 C.F.R. § 404.1567(b); *see also* SSR 83-10, 1983 WL 31251, at *2. Further, "[t]he functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work." 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.00(a).

The ALJ was also not obligated to identify a specific occupation Ornelas could perform, since "[t]he existence of jobs in the national economy is reflected in the 'Decisions' shown in the rules." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b). The ALJ properly recognized that the facts here perfectly correlated with grid Rule 202.10, which directs a finding of "not disabled." (R. 25-26); 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.10. Accordingly, the

Court finds that the ALJ's analysis properly ended with the application of this rule, and the ALJ's burden at Step 5 was satisfied.

In sum, the Court finds that the ALJ did not err in ending his analysis with the application of the Medical-Vocational Guidelines. Accordingly, the Court further finds that the ALJ's decision properly relied on the Medical-Vocational Guidelines to satisfy the Commissioner's Step 5 burden to show that jobs existed in significant numbers in the national economy that Ornelas could perform.

## IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's Decision denying benefits is **AFFIRMED**.

**SIGNED** and **ENTERED** this 22nd day of December, 2020.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**